MATTER OF MANSOUR·

In Section 212(e) Proceedings

A-13971310

*Decided by District Director June 3, 1965*

An exchange visitor from Egypt is granted a waiver of the 2-year foreign-residence requirement of section 212(e) of the Immigration and Nationality Act, as amended, because compliance therewith would result in exceptional hardship to his United States citizen wife not only as a result of accompanying him abroad but also as the result of her having to remain in the United States while he fulfills his obligation since due to an existing emotional problem, and according to medical opinion, she would suffer undue mental anguish at this time if deprived of the companionship of her husband.

Discussion: Applicant is a 33-year-old native and citizen of Egypt, who is subject to the requirements of section 212(e) of the Immigration and Nationality Act, as amended, due to his admission as an exchange visitor at New York, New York on November 14, 1958. He has remained in the United States since that time participating in several exchange visitor programs relating to the field of medicine and is presently a Research Fellow in the Department of Anatomy at the Emory University School of Medicine, Atlanta, Georgia. He married Miss Virginia May Spaulding, a citizen of the United States on February 23, 1963 at Cincinnati, Ohio.

Section 212(e) of the Immigration and Nationality Act provides as follows:

No person admitted under section 101(a)(15)(J) or acquiring such status after admission shall be eligible to apply for an immigrant visa, or for permanent residence, or for a nonimmigrant visa under section 101(a)(15)(H) until it is established that such person has resided and been physically present in the country of his nationality or his last residence, or in another foreign country for an aggregate of at least two years following departure from the United States: *Provided,* That such residence in another foreign country shall be considered to have satisfied the requirements of this subsection if the Secretary of State determines that it has served the purpose and the intent of the Mutual Educational and Cultural Exchange Act of 1961: *Provided further,*

That upon the favorable recommendation of the Secretary of State, pursuant to the request of an interested United States Government agency, or of the Commissioner of. Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest: *And provided further,* That the provisions of this paragraph shall apply also to those persons who acquired exchange visitor status under the United States Information and Educational Exchange Act of 1948, as amended.

In determining the merits of an application for a waiver of the foreign residence requirements, we must consider the Congressional intent of the statute. House of Representatives Report No. 721 dated July 17, 1961, prepared by Subcommittee No. 1 of the Committee on the Judiciary, on the "Immigration Aspects of the International Educational Exchange Program" is pertinent. On page 121 of this report, the Subcommittee reiterates and stresses the fundamental significance of a most diligent and stringent enforcement of the foreign residence requirement. The report states, "It is believed to be detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the ajudication of waivers, including cases where marriage occuring in the United States, or the birth of a child or children, is used to support the contention that the exchange alien's departure from this country would cause personal hardship." This application represents a claim by the applicant that his departure would impose exceptional hardship upon his United States citizen spouse. Therefore, it must first be determined whether. or not such hardship would occur as the consequence of her accompanying him abroad, which would be the normal course of action to avoid separation. The mere election by the spouse to remain in the United States, absent such determination, is not a governing factor since any inconvenience or hardship which might thereby occur would be self-imposed. Further, even though it is established that the requisite hardship would occur abroad, it must also be shown that the spouse would suffer as the result of having to remain in the United States. Temporary separation, even though abnormal, is a problem many families face in life and, in and of itself, does not represent exceptional hardship as contemplated by section 212(e), *supra.*

Applicant is an obstetrician-gynecologist, who resided in Egypt prior to his admission as an exchange alien. He has been absent from Egypt almost seven years. Although his professional skill would no doubt be in demand in Egypt, his future would be uncertain and his earnings considerably less than at present. His spouse would, conse-

307.

quently, be required to make a major economical adjustment, which could conceivably result in privation by the end of two years. In addition, she is of the Christian faith, whereas Egypt is predominantly Moslem. While this would not subject her to persecution, it would preclude normal assimilation in the country and restrict her realm of social intercourse. There is also a psychological factor in that the spouse, knowing that Egypt exercises control over the departure of its nationals, fears the applicant might not obtain permission to leave the country after completing the required two years' residence, which is a possibility that cannot be ruled out. This fear extends to any children who might be born to her while there, since they would also be Egyptian nationals. These circumstances would obviously subject the spouse to radical changes from her normal way of life, so we find that exceptional hardship would be imposed upon her if she accompanied the applicant abroad.

We must now consider whether exceptional hardship would be experienced by the spouse should she remain in the United States while applicant is fulfilling his obligation. This requires a finding that problems exist which would endanger the spouse's health if separated from applicant or that difficulties incident to her separate maintenance and support would appreciably affect her standard of living and general welfare or bring about abnormal stress and strain. In this case, a child recently born to this couple died at birth of anencephaly. Medical testimony has been presented to point out that shock and fear for the future are basic reactions of a mother giving birth to an infant so deformed and that to relieve this anxiety, since the liklihood of reoccurence is remote, another pregnancy is recommended as soon as possible. Medical opinion also states the spouse would suffer undue mental anguish at this time if deprived of the companionship of her husband. This establishes that separation would result in exceptional hardship, so it is unnecessary to explore the factors relating to separate maintenance and support.

In view of the foregoing, it has been determined that the applicant's compliance with the foreign residence requirement would impose exceptional hardship upon his United States citizen spouse. The Department of State has reviewed the application and recommends that the waiver be granted. It is further found that admission of the applicant to the United States would be in the public interest.

ORDER: It is ordered that the application of Dr. Fawzy S. Mansour for a waiver of the two-year foreign residence of section 212(e) of the Immigration and Nationality Act, as amended, be and the same is hereby granted.